383 So.2d 380 (1980)
STATE of Louisiana
v.
Alan B. McCABE.
No. 65974.
Supreme Court of Louisiana.
April 7, 1980.
As Amended On Denial of Rehearing May 19, 1980.
*381 Rollin W. Cole, Jr., Larry S. Butler, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul J. Carmouche, Dist. Atty., B. Woodrow Nesbitt, Jr., James C. McMichael, Jr., Asst. Dist. Attys., for plaintiff-appellee.
de la HOUSSAYE, Justice Ad Hoc.
Defendant McCabe was charged in the 1st Judicial District Court, Parish of Caddo, Gayle K. Hamilton, Judge, of violation of La.R.S. 40:966, and 40:967 for possession of LSD; possession of marijuana with intent to distribute, and possession of Phencyclidine. After the judge denied his motion to suppress, he pleaded guilty to simple possession of LSD and Phencyclidine, reserving all rights of appeal. Upon receipt of the guilty plea, defendant received a suspended 5 year jail sentence, and was placed on supervised probation for five years, conditioned upon his entering and completing the Odyssey House Treatment Program. In addition, defendant was ordered to pay a fine of $300 plus costs, in default of which he would serve 60 days in parish jail.
Defendant then appealed the ruling of the district court judge denying to suppress the evidence on grounds of illegal search and seizure.
The sole issue on appeal is the correctness of the trial judge's ruling in denying defendant's motion to suppress the evidence on grounds of illegal search and seizure.
On Sunday, July 23, 1978 the defendant attended church services with his friends, the Roppolos. They agreed to meet later at the Roppolo's home in order to show McCabe's prize winning Doberman Pinscher to some friends. McCabe arrived at about 7:30 p. m. in his brown Ford pickup truck. The testimony is unclear, but it appears defendant parked in front of the Roppolo's home, but partially blocking the driveway; then the truck was later moved to clear the driveway. As McCabe stepped from the truck, his dog escaped, but was caught by the Roppolo children.
The defendant was clearly in a state of intoxication, as he began walking down the street, raising his hands over his head, clenching his fists, and talking loudly, as observed by Hall and the neighbors. At one point he pulled off his shirt and threw it to the ground. He continued down the block and around the corner, and subsequently became involved in a disturbance. As a result, the Shreveport Police Department was notified, and defendant was placed under arrest and taken into custody for using profanity.
While defendant was around the corner, Mrs. Roppolo called McCabe's physician, Dr. Carl Rice. Being concerned about defendant's condition, she also spoke briefly to her next door neighbor, Mr. Norman Hall, who was outside watching his children play when defendant arrived. During their conversation, Hall was standing directly beside the truck, and looked into defendant's truck. He saw a pistol lying on the seat of the truck. Being concerned about defendant's *382 displayed behavior, he opened the door to check the gun, and found that it was loaded. While examining the gun, he noticed a half-full whiskey bottle on the front seat, as well as an opaque plastic container with a syringe lying on top of it on the floorboard below the driver's seat. Hall took the container out and inspected it, finding what appeared to be drugs and seeds inside. He showed this to Mrs. Roppolo and returned it to the truck. Later, he again removed the container and showed it to Mr. Roppolo. Defendant's doctor then also saw the container and wiped off fingerprints. He refused to call the police after Hall's request that he do so. The container was again placed back into the truck, and Hall tried without success to lock the doors. Hall then called the police.
Narcotics agent Al Brice arrived about 9:30 p. m. and learned of the items in the truck. Brice first decided to have the vehicle impounded until a search warrant could be obtained. He went next door to get the keys from the Roppolos. Hall again entered the truck, retrieved the container, and showed it and its contents to Brice, whereupon Brice re-entered the truck and placed the container back on the floorboard. Brice called authorities at the DA's office, and after conversing with them, decided a search warrant and impoundment were no longer necessary. He then thoroughly searched the truck, and seized the tupperware container and its contents.
This search was conducted initially by a private citizen. Although Hall entered the truck on several occasions, it can be argued that the subsequent entries worked no greater hardship on the defendant than the first intrusion. Defense alleges that the search of a truck by a private citizen who had no legal or reasonable cause to do so violated defendant's affirmative right to privacy as embodied in Article I Section 5 of the Louisiana constitution of 1974.
"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court." (emphasis added)
Defendant argues that the 4th Amendment of the U.S. Constitution operates as a restraint on direct government action. States may, however, extend greater rights than those provided by the U.S. Constitution. Therefore, notwithstanding searches made by private citizens have hitherto been considered beyond the scope of 4th Amendment protection, Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); McGuire v. U.S., 273 U.S. 95, 47 S.Ct. 259, 71 L.Ed. 556 (1927); State v. Bryant, 325 So.2d 255 (La.1975), defense is attempting to find protection through a broad interpretation of this Article of the State Constitution.
In the alternative, defendant contends that the contraband was seized by authorities pursuant to a warrantless search of defendant's truck, absent exigent circumstances, when none of the narrowly delineated exceptions to the warrant requirement were applicable, following the initial search by the private citizen.
As to the first argument, this Court has never directly addressed the applicability of Louisiana's prohibition against unreasonable searches and seizures conducted entirely upon the initiative of a private party. In State v. Hutchinson, 349 So.2d 1252 (La. 1977), evidence of a crime was observed attached to the underside of defendant's van by his employer, who reported to police. This search by a private citizen, leading to impounding of the vehicle by police, was upheld as not an unreasonable invasion of defendant's privacy. However, this Court held:
"We are unwilling to hold that the rights safeguarded by Article 1, Section 5 of our constitution are merely coextensive with those protected by the Fourth Amendment *383 to the federal constitution, or that private searches and seizures are not within the ambit of protection afforded by our state charter." 349 So.2d at 1254.
But under the given facts of this case, we find it unnecessary to look to any interpretation of the scope of Article I Section 5. Defendant came into the neighborhood acting strangely and talking incoherently. He loosed a large dog upon a neighborhood full of children and young teenagers. Hall testified his boy was afraid of dogs. Defendant's continuing strange behavior, coupled with Hall's manifest concern justified his glancing into the truck, seizing and examining the pistol which led to his discovery of the liquor and drugs. We find this search was reasonable and that any privacy interest which defendant may have had was subordinated to Hall's concern for the safety and welfare of his children.
In support of this position, we find that courts have frequently held that evidence obtained by a private search is admissable where a superior right or interest attaches to the individual conducting the search at that time or place. Gold v. U. S., 378 F.2d 588 (9th Cir. 1967). Thus, neither probable cause nor exigent circumstances need come into play.
As to defendant's second argument, that the government search was illegal, we find that Officer Brice took every precaution to protect defendant's Fourth Amendment rights. The Supreme Court has insisted upon probable cause as a minimum requirement for a reasonable search. As a general rule, it has also required the judgment of a magistrate on the probable cause issue and the issuance of a warrant before a search is made. There are few exceptions to searches conducted outside the judicial process. Katz v. U. S., 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Lewis, 378 So.2d 396, (La.1979); State v. Parker, 355 So.2d 900 (La.1978).
Warrantless searches of vehicles have been upheld where there exists interests superior to those of the citizen. In State v. Parker, 355 So.2d 900, this court noted that the citizen's interest in the privacy of his automobile is somewhat less than his interest in the privacy of his home or structure.
A finding of exigency, such as the difficulty of obtaining a search warrant may justify a warrantless search where the police have probable cause to search a vehicle stopped on the highway and the circumstances require immediate action. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1975); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Wilbourn, 364 So.2d 995 (La.1978); State v. Lain, 347 So.2d 167 (La. 1977); State v. Tant, 287 So.2d 458 (La. 1978).
The facts here, as stated, support a finding of exigency. Officer Brice testified that it could have taken all night to obtain a warrant due to the small number of officers working on Sunday night. No other officers were available to assist in guarding defendant's vehicle, hence the decision to impound the vehicle was thus clearly justifiable. Brice felt a search warrant no longer necessary since the previous invasions by a private citizen justified his subsequent search.
The propriety of the seizure of the drugs being at issue, it is necessary to state that the truck remained parked on a public street attended by a single officer. The defendant's mother had earlier requested the keys to the truck which was parked in front of the home of the Roppolos, the same friends who had earlier failed to disclose the presence of narcotics in the vehicle. Thus, in spite of defendant's earlier arrest on profanity charges, surrounding circumstances appeared sufficient to justify seizure of the evidence without a warrant. (Carroll v. United States, supra). As for the argument in favor of immobilizing the vehicle, we find this language in Chambers v. Maroney, supra, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419:
"Arguably, because of the preference for a magistrate's judgment, only the `lesser' intrusion is permissable until the magistrate *384 authorizes the `greater.' But which is the `greater' and which `lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." 399 U.S. at 51-52, 90 S.Ct. at 1981.
We find no merit in defendant's alternative argument.

DECREE
For the foregoing reasons, the decision of the district court denying defendant's motion to suppress is upheld.
Affirmed.