SUMMERS, Justice.
A grand jury indictment charged appellant Anthony Ray Gibson with armed robbery, attempted first degree murder and attempted aggravated rape. In a trial by jury appellant was found guilty of armed robbery, attempted second degree murder and attempted aggravated rape. Following a pre-sentence investigation appellant was sentenced to 99 years at hard labor without benefit of parole, probation or suspension of sentence for armed robbery; 35 years for attempted second degree murder and 35 years at hard labor for attempted aggravated rape. The sentences were ordered to run consecutively.
The central issue presented by this appeal is the free and voluntary character of appellant’s confession and a contention that an inordinate delay occurred before counsel was appointed to represent him after his arrest and incarceration.
The issues are presented in a motion to suppress in advance of trial, and in a hearing outside the presence of the jury during trial at which time the voluntariness of the confession was again considered and found to be free and voluntary by a second judge.
The victim of the crimes committed by appellant was a married woman who owned and operated a small clothing shop in the town of Jeanerette. On the afternoon of December 6, 1976 appellant entered the store while the proprietress was alone. After browsing a while he selected an item to be gift-wrapped, but departed without the gift when another customer entered the store.
The next day, when the proprietress was alone, he returned about two o’clock in the afternoon. After a while he grabbed the proprietress and held a large knife to her throat, and demanded money, which she gave to him. He then locked the front door and forced the victim into a small room to the rear of the store. There he tied her hands behind her back, made her lay on the floor and raped her. He then tied her feet, covered her face with clothing and cut and stabbed her about, the throat, neck, head and back. Appellant then left the store, taking a bank bag with money and checks from the store.
He was arrested later that day in Jeaner-ette for theft of a .22-caliber rifle, an offense unrelated to the instant prosecution. Because the parish jail was being renovated, appellant was incarcerated in the city jail in New Iberia. As a result of an investigation by the authorities an affidavit was filed on December 13, 1976 charging appellant with armed robbery and attempted murder. The next day he was transferred to the parish courthouse for fingerprints, photographs and processing generally.
On that afternoon appellant was in the office of James Desormeaux, the chief crim *1094 inal deputy of the sheriff’s office, for questioning. Appellant was given the Miranda warnings, which Major O’Neil Tyler read to him from a card. When appellant stated that he didn’t mind talking to the officers without an attorney, Chief Desormeaux asked him, in Major Tyler’s presence, what he knew about the robbery of the clothing shop. Appellant answered he knew nothing, saying he had spent the day at Alfred’s bar shooting pool. Chief Desormeaux then decided appellant was not going to tell the truth and ordered him returned to the city jail. The entire incident lasted only three to five minutes.
The next day, December 15, appellant was again transferred to the courthouse from the city jail to complete the processing procedure begun the previous day and not finished because the officer in charge of that activity was absent. On this second occasion, while appellant was in Chief De-sormeaux’s office, the Chief and Lieutenant Moore were present. Desormeaux asked appellant if he wanted to talk about the charges against him, to which he replied that he had explained everything the day before. Whereupon, Desormeaux ordered that he be returned to the city jail.
Lieutenant Moore, who, like the defendant, was black, interceded and- requested permission to talk to appellant alone, feeling that he could establish a better rapport with him. Appellant and Moore then went into an adjoining office where Moore gave the Miranda warning and, after a brief interrogation, came out and announced that appellant would talk.
Desormeaux then advised appellant that it would be necessary to record his statement, and when appellant acquiesced he sent for a tape recorder. When it arrived he repeated the Miranda warnings to appellant, who then made a recorded statement recounting the facts essentially as narrated above.
Appellant did not take the stand at the motion to suppress; and no evidence was offered on his behalf. Witnesses for the State testified to the facts set forth above and that appellant was not handcuffed when he gave the taped confession, and no duress, force, threats or promises were used to induce him to confess. Fully cognizant of the heavy burden imposed upon the State to prove that a confession is free and voluntary, the trial judge denied the motion to suppress. He found the confession to be made freely and voluntarily, without influence, fear, duress, intimidation, menaces, threats, inducements or promises, and that there was no evidence to the contrary.
The second hearing on the voluntariness of the confession also involved the authenticity of the tape. At this hearing the three officers present at the December 14 and 15 interrogation of appellant testified substantially as they had at the motion to suppress. They also verified their voices and that of appellant on the tape. Evidence was introduced to show a chain of custody of the tape from December 15, 1976 to the date of this hearing.
On this latter occasion appellant testified outside the presence of the jury, claiming that Chief Desormeaux threatened that if he won this case and got out of jail “they going to have you killed,” and warned that unless he came across with the truth he would be sent to the jail in Orleans Parish “so them dudes can jump on me.” He further testified that he was cursed by Chief Desormeaux who also promised him that he would only be imprisoned for five years if he confessed.
Following appellant’s testimony the State called Chief Desormeaux and Lieutenant Moore in rebuttal. Lieutenant Moore categorically denied that the threats or inducements to which appellant testified were made by either him or Chief Desormeaux. Testimony by Chief Desormeaux was to the same effect.
At the conclusion of this hearing outside the presence of the jury the trial judge was convinced beyond a reasonable doubt that the State had shown that appellant’s confession was freely and voluntarily given with full knowledge of all of his constitutional rights and with a knowing and intelligent waiver of those rights. A finding was made that appellant testified that he *1095 was advised of his rights and that he also signed the waiver of rights form.
Prior to presenting the confession to the jury, the State again introduced evidence concerning the circumstances surrounding the making of the confession for the purpose of enabling the jury to determine the weight to be given to it, as required by Article 703 of the Code of Criminal Procedure. The jury’s verdict of guilty implies a finding that the confession was free and voluntary.
The evidence amply supports a finding that the State has affirmatively shown that appellant’s confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.Rev.Stat. 15:451.
Although the record is not clear on the subject, it is certain that appellant was without the benefit of counsel for at least eight days after his arrest and incarceration. This would indicate a failure to comply with Article 230.1 of the Code of Criminal Procedure, which requires the sheriff to bring arrested persons before a judge promptly, and in any case within 144 hours from the time of arrest, a time limit which may be extended by the judge upon a showing of good cause, the purpose being to appoint counsel for the person arrested.
Renovation of the jail in progress at the time and appellant’s incarceration in the city jail disrupted the routine procedures established for complying with Article 230.-1. While this does not excuse compliance, it is indicative of the fact that no effort was made to deny appellant the timely benefit of counsel. In any event the sheriff’s failure to comply has no effect upon the validity of these proceedings. La.Code Pro. art. 230.1(D).
For the reasons assigned, the conviction and sentence are affirmed.