371 So.2d 1158 (1979)
STATE of Louisiana
v.
Rickey Ronell DURIO and Lawrence Lee Cooper, a/k/a Pete Montgomery.
No. 63670.
Supreme Court of Louisiana.
May 21, 1979.
*1160 Claude R. Sledge, Indigent Defender, Mansfield, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James Lynn Davis, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Division, Gretna, for plaintiff-appellee.
CALOGERO, Justice.
Defendants' principal complaint in this appeal is that the trial court erred in refusing to grant a motion for continuance filed twenty days following arraignment and five days prior to trial. For the reasons we relate hereinafter, and because defendants' other two arguments are also non-meritorious[1] we affirm defendants' convictions and sentences.
Defendants Rickey Durio and Lawrence Cooper, Jr. were charged by indictment with second-degree murder, a violation of R.S. 14:30.1. Tried by a jury of twelve, they were found guilty as charged and sentenced to life imprisonment.
Testimony at trial established that on the evening of December 17, 1977, three men drove to the general store in the Mount Zion Community in Sabine Parish. The store was closed, but two of the men approached the house behind the store in which Lucille and Henry Davidson lived. After they knocked on the door and Mrs. Davidson answered, the two men forced their way inside and demanded money. When the amount produced proved insufficient, they beat Mrs. Davidson. The third man, who had been acting as a lookout, ran into the house. Although he was there only for an instant the Davidsons identified the third man as a long-time neighbor and customer at their store.
Within several hours Kenneth Ray "Jake" Smith was arrested in the nearby town of Pleasant Hill, trying to exchange some of the silver coinage taken in the robbery for bills. Smith was identified as the lookout. He confessed to the police, implicating the defendants Durio and Cooper. Lawrence Cooper was arrested in Baytown, Texas, about February 16, 1978; Durio was arrested in April, 1978, at a location not given in the record.
Several days after the robbery Mrs. Davidson began to experience violent headaches, and was admitted to Schumpert Hospital in Shreveport. Doctors there found blood pooling around the brain (a subdural hematoma) and drained the area. Mrs. Davidson was then transferred to confederate Memorial Hospital in Shreveport where she contracted bronchial pneumonia and died on February 9, 1978. Defendants Durio and Cooper were indicted on September 13, 1978 for second-degree murder. Kenneth Smith, the third man, was allowed to plead to a lesser offense in return for his testimony at trial.

ASSIGNMENT OF ERROR NO. 1

Denial of Defendants' Motion for Continuance
The defense motion for a continuance related solely to counsel's need for adequate time to review medical evidence and prepare to defend against the state contention that Mrs. Davidson's death resulted from the beating inflicted upon her by the defendants when she was robbed.
The prosecution on the instant charge began when defendants were indicted for second degree murder on September 13, 1978. On September 19th, defense counsel was notified of his appointment. Defendants were arraigned September 20th, at which time trial was set for October 16, 1978.
*1161 Counsel filed discovery motions on September 22nd, and was promised on September 28th copies of whatever he wanted from the state's file. On October 4th, when he had an opportunity to view the state's file, he found that it contained no medical records. Nonetheless, on October 6th he was put in touch with Dr. George McCormick a forensic pathologist from whom he learned, by telephone, the conclusions reached as to the cause of death in the autopsy report. Dr. McCormick mailed a copy of his report to defense counsel. It was apparently not received until sometime between October 11th and October 13th. Counsel also learned from Dr. McCormick that the victim had been operated on and had received care at Confederate Memorial Hospital in Shreveport in connection with the beating she had received. Counsel did not review the victim's records at the hospital and when the hospital refused to release the records to him without a subpoena, he filed a request for a subpoena and a motion for a continuance on October 11th. The motion for a continuance was denied at a contradictory hearing on October 13th and trial commenced on October 16th.
Article 712 of the Louisiana Code of Criminal Procedure provides that:
"[a] motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor."
The general rule is that the denial of a continuance is not ground for reversal absent an abuse of discretion. State v. Hammontree, 363 So.2d 1364 (La.1978); State v. Lukefahr, 363 So.2d 661 (La.1978).
This Court has generally declined to reverse convictions absent a showing of specific prejudice caused by denial of a continuance. See e. g., State v. Hopkins, 351 So.2d 474 (La.1977); State v. Kenner, 336 So.2d 824 (La.1976); State v. Smith, 322 So.2d 197 (La.1975); and State v. Brewer, 301 So.2d 630 (La.1975) in which this Court found no abuse of discretion when the trial court denied the motions for continuance when there were three months, thirty-five working days, ninety days and three weeks respectively for counsel to prepare for trial and where there was no showing of specific prejudice.
Only where preparation time was so minimal as to call into question the basic fairness of the proceeding has the Court excused the failure to allege specific prejudice. In State v. Winston, 327 So.2d 380 (La.1976), for instance, we reversed the defendant's conviction for distribution of heroin when defense counsel was given only three days in which to prepare for trial. For a similar result, see United States v. Millican, 414 F.2d 811 (5th Cir. 1969), in which the Fifth Circuit reversed defendant's conviction for causing stolen goods to be placed in interstate commerce because defense counsel, working on his first criminal case, had only two days in which to prepare for trial.
Similarly in the recent case of State v. Benson, 368 So.2d 716, (La.1979), this Court reversed a conviction for denial of a continuance even without a showing that exculpatory evidence would have been presented, and without a specific allegation or showing of prejudice, where counsel, whose diligence was not seriously questioned, had only three days (over a weekend) to evaluate the importance of a note given the bank teller by an armed robber and to obtain expert opinion concerning the note, in a case where identity of the robber was seriously in dispute. The decisions in Winston and Benson suggest that when preparation time is unreasonably short, counsel has been diligent, and there is a general allegation of prejudice, denial of a motion for continuance is an abuse of discretion and constitutes reversible error.
In the present case, while a grant of a continuance would certainly not have been unwarranted,[2] we cannot conclude that the trial judge abused his discretion, nor that defendants were so prejudiced by the denial as to require reversal of their convictions.
*1162 Counsel, aware a full twelve days prior to trial that the state's file lacked medical records, learned from Dr. George McCormick, the forensic pathologist who performed an autopsy on the victim, his conclusions as to the cause of the victim's death. (Dr. McCormick testified at trial that the cause of death was bronchial pneumonia). Counsel also learned in that conversation that the victim had undergone cranial surgery at Schumpert Hospital. He was or should have been alerted at that time to the possible significance to his defense that defendant died post-operatively from bronchial pneumonia, and to the need to explore that avenue.
An equally significant factor influencing our decision that defendants were not prejudiced by denial of the continuance is the medical testimony at trial. Dr. McCormick, called by the state, testified as to the cause of death. He stated that the autopsy performed on Mrs. Davidson indicated that she had died of bronchial pneumonia, that the probable cause of the pneumonia was hospitalization and varying degrees of unconsciousness secondary to the subdural hemorrhage, and that the pneumonia was a direct result of the beating.
Dr. Randolph Taylor, the admitting physician at Confederate Memorial, testified essentially the same as Dr. McCormick: that while in the hospital recovering from the blows to her head, Mrs. Davidson contracted bronchial pneumonia and died, but had she not been required to lie down in bed for such a prolonged period, it is unlikely that she would have contracted pneumonia.
The stipulated testimony of Dr. Frederick Boykin, the surgeon who had operated to relieve pressure from the hematoma, was to the effect that Mrs. Davidson had no reason to be in the hospital other than the damage occasioned to her brain. He conceded that chances for a complete recovery following surgery had been good.
In this context, counsel's contention that he might have prepared a better medical case is unconvincing. There is no merit to this assignment.

ASSIGNMENT OF ERROR NO. 2
Defendant, Cooper, moved to quash the indictment of second degree murder based upon grounds that "the court failed to have defendant Lawrence Lee Cooper, Jr., appear in court pursuant to La.C.Cr.P. art. 230.1[3] paragraphs A and B." The trial court's denial of the motion is the basis of this assignment.
There is no merit to this assignment. Section D of Article 230.1 provides that "the failure of the sheriff to comply with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant."

ASSIGNMENT OF ERROR NO. 3
In this assignment defendant, Cooper, contends that the trial court erred in refusing to hold Section D of Article 230.1 of the Code of Criminal Procedure unconstitutional. He contends that Section D violates the defendant's right to due process and equal protection of the laws and also denies him the right to counsel.
*1163 In State v. Gibson, 357 So.2d 1092 (La. 1978), the Court stated that the primary goal of Article 230.1 is the prompt appointment of counsel. The very statute which is designed to accomplish that plausible goal specifically provides in Section D that the failure to comply shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant. The statute taken as a whole is designedly of limited effect: "if the arrested person is not brought before a judge . . ., he shall be released forthwith."
Section D does not violate the due process and equal protection clauses of either the United States or Louisiana Constitutions. Any violation of due process or denial of effective assistance of counsel (guaranteed by Powell v. Alabama and its progeny) occurring during the period defendant is held beyond seventy-two hours and until counsel is appointed which is of sufficient magnitude to require reversal of defendant's conviction is independent of defendant's being denied the statutory right to a hearing within seventy-two hours as provided by Article 230.1. Therefore Section D of that statute is not unconstitutional.

ASSIGNMENT OF ERROR NO. 4
In this assignment defendant, Cooper, contends that because he was not brought before a judge for the appointment of counsel within seventy-two hours of his arrest, he should have been released from custody in accordance with Article 230.1(C). The fact that defendant had been held beyond seventy-two hours without the appointment of counsel was not brought to the trial court's attention until defense counsel filed a motion to have defendant released on October 11, 1978, nearly a full month after counsel had in fact been appointed and only five days before the commencement of trial. While the trial court's denial of the motion to have defendant released may have been error, and may have prompted this Court to order him released had he sought supervisory writs to review the ruling at the time,[4] we review this ruling after defendant has been convicted and sentenced. The issue at this point in the proceeding is now certainly moot.

ASSIGNMENT OF ERROR NO. 6
Defendants contend that the trial court erred in denying their motion for a new trial. They argue that because the medical testimony introduced at trial indicated that Mrs. Davidson died of bronchial pneumonia and not from head injuries sustained as the result of a beating, the verdict finding them guilty of second degree murder is contrary to the law and the evidence.
In State v. Wilson, 114 La. 398, 38 So. 397 (1905) a similar argument was raised. In that case defendant was found guilty of murder when the victim he shot subsequently died from pneumonia. Based on medical testimony which indicated that the victim would not have contracted pneumonia but for the gunshot wound, this Court held that causation had been established. The court found that if the defendant "hastened the termination of life, or contributed, mediately or immediately, to the death, in a degree sufficient to be a clearly contributing cause, that is sufficient." A similar standard for determining causation in fact is approved by LaFave and Scott in their treatise on criminal law. The test adopted there is "Was the defendant's conduct a substantial factor in bringing about the forbidden result." LaFave and Scott, Criminal Law, § 35, p. 250 ff. See also Focht, Proximate Cause in the Law of Homicide, 12 Cal.L.Rev. 19, 27 (1938).
*1164 It is clear from the testimony produced by the state that the legal cause of the victim's death was the injuries inflicted on the victim at the time of the beating. All three medical experts testified that Mrs. Davidson died of bronchial pneumonia but stated that the probable cause of the pneumonia was the depressed state of her defense systems due to the head injuries and the operation necessitated by them. In his testimony Dr. McCormick explained that the contraction of pneumonia is a common result of a patient's position and comatose state following traumatic injury.
A motion for a new trial based on the lack of evidence to support the verdict does not raise a reviewable question of law unless there is a total lack of evidence to prove the crime or an essential element thereof. State v. Williams, 310 So.2d 513 (La.1975). A review of the testimony at trial indicates that there was substantial evidence presented that the legal cause of the victim's death was the injuries inflicted by the defendant. This assignment therefore lacks merit.

Decree
For the foregoing reasons the convictions and sentences of defendants are affirmed.
AFFIRMED.
DIXON, J., concurs and assigns reasons.
DIXON, Justice (concurring).
I respectfully concur, but only because the record does not support the claim of prejudice from the denial of the continuance.
NOTES
[1] Defendants rely upon eight assignments of error, five of which are consolidated into three arguments in defense brief. The remaining three which were neither briefed nor argued are considered abandoned.
[2] This was defense counsel's first request for a continuance, made just twenty-six days after indictment and twenty-one days after counsel was notified of his appointment.
[3] Louisiana Code of Criminal Procedure Article 230.1 provides:

"A. The sheriff having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of counsel. Saturdays, Sundays, and legal holidays shall be excluded in computing the seventy-two hour period referred to herein.
B. At this appearance, if a defendant has the right to have the court appoint counsel to defend him, the court shall assign counsel to the defendant. The court may also, in its discretion, determine or review a prior determination of the amount of bail.
C. If the arrested person is not brought before a judge in accordance with the provisions of Paragraph A of this Article, he shall be released forthwith.
D. The failure of the sheriff to comply with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant."
[4] It should be noted that at least one Justice of this Court, my brother Justice Tate, believes that the remedy for violation of the article is exclusion of any statement secured when counsel should have been but was not afforded. Justice Tate in that case concurred in a majority determination on a writ application concluding that the right to be released was moot where counsel had been provided, however late. Justices Dixon, Dennis and the author, in that case, were of the view that Article 230.1 was unequivocal and required the immediate release of the defendant. See State v. Daigle, 353 So.2d 287 (La.1977).